IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

95-7207-CIV-GRAHAM
(Magistrate Judge Sorrentino)

TIMOTHY BROWN,

   Petitioner,

vs.

HARRY K. SINGLETARY,

   Respondent.

NIGHT BOX
FILED
JUN 10 1998
CARLOS JUENKE
CLERK, USDC / SDFL / MIA

---

**PETITIONER'S RESPONSE TO
STATE ATTORNEY'S MOTION TO QUASH SUBPOENA,
AND REPLY TO OBJECTIONS TO SUBPOENA**

---

The petitioner, Timothy Brown, through counsel, respectfully responds to the state attorney's motion to quash subpoena/objections to subpoena, as follows:

**I. Petitioner has requested the issuance of a subpoena only because the state attorney refuses to comply with its obligations under Fla. Stat. § 119. Unlike a traditional subpoena for non-public documents pursuant to Rule 45, Fed.R.Civ.P., the subpoena here essentially seeks to enforce compliance with the Public Records Law**

  A. Review of the state attorney's file is the "threshold" or "background" investigation necessarily preceding all others in a § 2254 case. Here, the Court had no choice but to issue a subpoena, due to the state attorney's footdragging and attempts to obstruct this most basic investigation of public records. The Motion to Quash glosses over the actual genesis of the subpoena here. As the Court is aware, in the order appointing counsel for Mr. Brown, counsel was directed

"file such other pleadings or memoranda in this matter as he or she may deem necessary." The Court advised, "Such additional pleadings may include, within the discretion of the Federal Public Defender, any amendments to the pending pro se petition for habeas corpus relief to include any claims that were exhausted in the state forum, with an appropriate supporting memorandum." Given the magnitude not only of the state file to be reviewed, but of the task of having to essentially "re-investigate" a case which had originally been investigated over many months by an 80-person task force of the Broward Sheriff's Office, undersigned counsel requested and the court granted a stay of the due date for filing an amended petition and supplemental memorandum of law in this case, so that counsel could -- as a threshold matter of investigation -- examine the state attorney's and Broward Sheriff's Office files in the Brown and King cases, pursuant to a public records request. The anticipated public records law request, was intended to give counsel an overview of the case, identify additional facts relevant to additional claims, and dictate the course of future investigations and/or court-ordered discovery pursuant to Rule 6. Unfortunately, however, the state refused to comply with its obligations under § 119, withheld any and all attorney notes and memoranda -- including the prosecutor's "personal pre-trial in preparation for litigation, hand-written notes" -- and forced this Court into the position of having to enforce the state attorney's public records law obligations. There would have been no request for a subpoena in this case, had the state attorney complied in good faith with petitioner's public records law request.

      B. <u>The materials requested are "public records," and the work product privilege does not shield "public records" from disclosure.</u>[1] The state attorney erroneously contends that the

---

[1] Petitioner does not challenge the state attorney's claim of a public records law exemption to the criminal history information and juvenile records in the file. The only materials sought herein are the state attorney's notes and inter-office/agency memoranda.

2

materials sought by petitioner "fall within the attorney work product doctrine, the deliberative process privilege, and are exempt from public disclosure pursuant to Fla. Stat. Ch. 119.072." Motion to Quash at 2, 9. It is unclear to the undersigned, what exactly is the "deliberative process" privilege. The state attorney has cited no authority in support of such a "privilege." The "work product" privilege, on the other hand, is well recognized. Were the materials in this case created by a private attorney, there might be a valid "work product" argument to be made. However, and contrary to the state attorney, the public records law specifically mandates the public disclosure of "work product" by governmental agency attorneys in closed cases. In this regard, section 119.07(3)(l)1. provides:

> A public record which was prepared by an agency attorney . . . or prepared at the attorney's express direction, which reflects a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the agency, and which was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or which was prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings, is exempt from the provisions of subsection (1) and s. 24(a), Art. I of the State Constitution **until the conclusion of the litigation**.

The Motion to Quash ignores this provision in its entirety, and does not even seek to invoke State v. Kokal, 562 So.2d 324 (Fla. 1990) -- as it previously did -- to circumvent the provision's dictates. By its failure to reaffirm any reliance on Kokal, the state attorney impliedly concedes in its motion that the limited Kokal exception for rough non-final notes (precursors of final documents, such as rough drafts, trial and/or deposition outlines), cannot bar the disclosure of the withheld state attorney notes and memoranda here. Indeed, in Kokal, the Florida Supreme Court expressly recognized that this narrow exception to work product disclosure does **not** pertain to "inter-office memoranda and intra-office memoranda communicating information from one public employee to another or merely prepared for filing, even though not a part of an agency's later formal public product." Id. at 327.

3

Thus, contrary to the state attorney's unsupported claim, there is no "attorney work product privilege," Motion to Quash at 2, 9, which bars disclosure of a document that is considered to be a "public record." Given the state attorney's demonstrated bad faith in refusing to comply with its obligations under Florida law -- which bad faith has heretofore obstructed a full and complete investigation of the facts of public record by Mr. Brown -- this Court most certainly had the power (as part of its supervisory, case-management authority) to issue a subpoena for the production of public records, in order to move this case forward. Such a subpoena for **public documents**, necessitated by the state attorney's wilful non-compliance with Florida law, should **not** be deemed a traditional "discovery subpoena" for non-public documents within the purview of Rule 6 of the Rules Governing § 2254 cases, and Rule 45, Fed. R. Civ. P. -- nor should it be subject to the constraints of those rules. The Court should reject the state attorney's arguments as to the "unripeness" of this case for Rule 6 discovery, deny the motion to quash, and order the withheld documents provided forthwith.[2]

**II. Even if the records in question were not "public records" and the subpoena were a traditional Rule 6 discovery subpoena, the fact that the petition has not yet been amended nor an evidentiary hearing granted does not render the case "unripe" for discovery "at this juncture." Contrary to the state attorney, pre-hearing discovery is allowed under Rule 6 "to establish a prima facie case," and there is "good cause" for such discovery here**

The state attorney claims that this case is not "ripe" for any kind of discovery, because

---

[2]Although the state attorney requests (as a last resort), that the Court conduct an in camera review of the documents in question if the Court does not quash the subpoena, Motion to Quash at 9, the state attorney's allegations as to privilege/exemption are so vague and conclusory (none of the documents withheld are even identified), that the state should not be deemed to have made the kind of threshold showing which might even warrant an in camera review.

4

counsel as not yet filed an amended petition formally adding a challenge to the voluntariness of the confession (or any other claims), and the Court has not yet ordered an evidentiary hearing. According to the state attorney, discovery is not available in § 2254 proceedings until the petitioner has stated a <u>prima facie</u> case for relief and the court has ordered an evidentiary hearing. These contentions are in error.

A. <u>Rule 6 authorizes wider discovery than the **Harris** decision-- that is, without a petition establishing a **prima facie** case, and prior to the granting of an evidentiary hearing</u>. The state attorney is correct that twenty (20) years ago in <u>Harris v. Nelson</u>, the Supreme Court stated that that

> a district court confronted by **a petition for habeas corpus which establishes a prima facie case for relief,** may use or authorize the use of suitable discovery procedures, including interrogatories, reasonably fashioned to elicit facts necessary to help the court to 'dispose of the matter as law and justice require. 28 U.S.C. s 2243.

394 U.S. 286, 290 (1969) (emphasis added). <u>See also id</u>. at 300 ("[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry"). The Court noted that discovery should allow

> development, **for purposes of the hearing**, of the facts relevant to disposition of a habeas corpus petition,

<u>Id</u>. at 298 (emphasis added), and that indeed, discovery was available

> at any time in the proceedings when the court considers that it is necessary to do so **in order that a fair and meaningful evidentiary hearing may be held...**

5

Id. at 300 (emphasis added).

The problem with the state attorney's argument, is that Harris is neither the sole nor the final word on discovery in § 2254 cases. To the contrary, in direct response to its final footnote in Harris urging the "meticulous formulation and adoption of special rules for federal habeas corpus and s 2255 proceedings," id. at 300 n.7, in 1976 the Supreme Court promulgated and Congress adopted the Rules Governing § 2254 Cases. Habeas Rule 6 provides as follows:

> (a) Leave of court required. A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and **for good cause shown** grants leave to do so, but not otherwise. If necessary for effective utilization of discovery procedures, counsel shall be appointed by the judge for a petitioner who qualifies for the appointment of counsel under 18 U.S.C. § 3006A.

Although the Advisory Committee's comments to Rule 6 note that this rule is "consistent with Harris v. Nelson," and reaffirms the district court's "duty" under Harris to order discovery where a petitioner's "specific allegations" "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief," the rule notably dropped Harris' requirement that the petitioner state a "prima facie case for relief" before being allowed discovery. Accordingly, as scholars James S. Liebman and Randy Hertz have noted, while

> Habeas Rule 6(a) [] authorizes at least as much discovery as Harris permitted[,] [t]here are several ways in which Rule 6 authorizes wider discovery than Harris. Although language in Harris suggests that the petitioner might have to establish a "prima facie case for relief" as a prerequisite to discovery, **Rule 6(a)'s "good cause shown" standard permits the use of discovery to establish a prima facie case** for relief. Moreover, the Advisory Committee Note to Rule 6 approves the **use of discovery in appropriate cases**

6

> **before an evidentiary hearing has been granted, a possibility not contemplated in Harris.**

Liebman and Hertz, Federal Habeas Corpus Practice and Procedure (2nd Ed.) § 19.4, p. 523. Indeed, the following comments by the Advisory Committee specifically recognize that habeas corpus petitioners may use discovery -- as here -- to develop facts sufficient to require an evidentiary hearing:

> While requests for discovery in habeas proceedings normally follow the granting of an evidentiary hearing, there may be instances in which discovery would be appropriate before hand. Such an approach was advocated in Wagner v. United States, 418 U.S. 618, 621 (9th Cir. 1969), where the opinion stated the trial court could permit interrogatories, provide for deposing witnesses, "and take such other pre-hearing steps as may be appropriate." While this was an action under § 2255, the reasoning would apply equally well to petitions by state prisoners. Such pre-hearing discovery may show an evidentiary hearing to be unnecessary, as when there are "no disputed issues of law or fact." 83 Harv. L. Rev. 1038, 1181 (1970). The court in Harris alluded to such a possibility when it said "the court may * * * authorize such proceedings with respect to development before or in conjunction with the hearing of the facts * * *. [emphasis added]. 394 U.S. at 300. Such pre-hearing discovery, like all discovery under rule 6, requires leave of court. . . .
>
> In order to make pre-hearing discovery meaningful, subdivision (a) provides that the judge should appoint counsel for a petitioner who is without counsel and qualifies for appointment when this is necessary for the proper utilization of discovery procedures. Rule 8 provides for the appointment of counsel at the evidentiary hearing stage (see rule 8(b) and advisory committee note), but this would not assist the petitioner who seeks to utilize discovery to stave off dismissal of his petition (see rule 9 and advisory committee note) **or to demonstrate than an evidentiary hearing is necessary.**[3] **Thus, if the judge**

---

[3]Significantly, however, Rule 8 also states that its allowance of the appointment of counsel for an evidentiary hearing, does "not limit the appointment of counsel under 18 U.S.C. § 3006A at any stage of the case **if the interest of justice so requires**." (Emphasis added). Other rules as well suggest the propriety of some pre-petition/pre-hearing discovery in the interests of justice -- in contradistinction to the rigid rule of Harris. See Liebman and Hertz, supra, § 19.3

7

> **grants a petitioner's request for discovery prior to making a decision as to the necessity for an evidentiary hearing**, he should determine whether counsel is necessary for the effective utilization of such discovery and if so, appoint counsel for the petitioner if the petitioner qualifies for such appointment.

(Emphasis added). Thus, the Advisory Committee squarely contradicts the state attorney's position that discovery may only be had once an evidentiary hearing has been granted.

Beyond the language of Rule 6 itself and the Advisory Committee comments, the post-Harris caselaw -- indeed the caselaw construing and applying Rule 6 -- has validated the Advisory Committee's interpretation of the rule to allow for discovery prior to the statement of a prima facie case, and the granting of an evidentiary hearing. Indeed, in Blackledge v. Allison, 431 U.S. 63 (1977), decided approximately a year after the enactment of Rule 6, the Supreme Court specifically cited the Advisory Committee's suggestion, in connection with Rule 6, that courts allow pre-hearing discovery to determine whether there is a factual basis for a claim, in order to avoid the time and expense of an evidentiary hearing where none is warranted. See id. at 80. In fact, the Court suggested, a district court should consider ordering discovery whenever the claim on which discovery is sought is not so "'palpably incredible' or 'patently frivolous or false' as to warrant summary dismissal." Id. at 78, 82-83.[4] And just last year, in Bracy v. Gramley, ___ U.S. ___, 117

---

(and authorities cited therein) (noting the availability of financial resources for investigative, expert, and other services before a habeas petition is filed); see also Rule 2(c), Rules Governing § 2254 Cases (petitioner is expected to "specify all the grounds for relief which are available to the [petitioner] and of which he has or by the exercise of reasonable diligence should have knowledge and [to] set forth in summary form the facts supporting each of the grounds thus specified."); Liebman and Hertz, supra §11.6 (noting that the "fact pleading" requirement differs from the "notice pleading" rules applicable in other federal civil cases).

[4] See also Jones v. Wood, 114 F.3d 1002, 1009 (9th Cir. 1997) ("discovery is available to habeas petitioners at the discretion of the district court judge for good cause shown, regardless of whether there is to be an evidentiary hearing"); East v. Scott, 55 F.3d 996 (5th Cir. 1995) (district

8

S.Ct. 1793 (1997), the Court clearly rejected the state attorney's <u>Harris</u>-based requirement of a <u>prima facie</u> case (and a scheduled evidentiary hearing) as a prerequisite to discovery, "relying instead on the considerably more forgiving formulation of the "good cause" rule taken from the same case, which only requires some "<u>reason to believe</u> that the petitioner <u>may</u>, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" Liebman and Hertz, § 19.4c, note 16 (1997 cumulative supp.) (citing <u>Bracy</u>, 117 S.Ct. at 1799)(emphasis added) . Indeed, regardless of the fact that no evidentiary hearing had been ordered in <u>Bracy</u> (or, as far as the decision indicates, requested), and regardless of the fact that the petitioner's factual allegations of unconstitutional conduct in that case were "quite speculative," "only a theory at this point," and "not supported by any solid evidence," the Court held that it was an abuse of discretion for the district court to have denied the defendant discovery of non-public documents in the state's possession. <u>See</u> 117 S.Ct. at 1797, 1799.

In maintaining its "tunnel vision" as to certain language plucked from <u>Harris</u>, the state attorney unjustifiably ignores all developments, refinements, and changes in the discovery standard over the 20 years since <u>Harris</u>. The Court should reject the state attorney's meritless backward-looking position -- a position which has been squarely rejected both by Congress and the Court.

B. <u>Under the Rule 6/Blackledge/Bracy standard, there is "good cause" for the requested discovery here</u>. It should be clear from the authorities cited above, that "good cause" is not reducible to any particular formula. An evidentiary hearing need not have yet been granted. The petitioner need not yet have set forth a <u>prima facie</u> case. According to Liebman and Hertz, "[o]verall, therefore, rule 6 warrants discovery 'when[ever] it would help the court make a reliable

---

court should order discovery, and then "[f]ollowing discovery, the the district court will thus have the opportunity to decide whether East has raised a genuine question of material fact requiring an evidentiary hearing.")

9

determination with respect to the petitioner's claim.'" Liebman and Hertz, supra, § 19.4, p. 524 (citing Herrera v. Collins, 113 S.Ct. 853, 883 (1993)(Blackmun, J. dissenting on other grounds)). The Court must simply have "**reason to believe** that the petitioner **may**, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." In making this determination, the Court need not insist on form over substance and restrict itself to the actual pro se petition; rather, it may consider everything that it knows about this case -- from all the pleadings filed heretofore. Reviewing what the court knows even at this early juncture, there is "reason to believe that Tim Brown may be able to establish that he is confined illegally and entitled to relief." The single piece of evidence against Timothy Brown in this case, was a taped statement made after an hour-long "pre-interview" with several BSO officers who admittedly wore down his denial of any wrong doing. These officers confronted Brown not only with the fact that Keith King had already implicated him, but also with the statement he had made months earlier (a statement which, at the time, even the Chief Homicide Detective Richard Scheff had not believed, believing instead that Brown was "high on crack," "like clay," and "not in possession of all of his faculties" and for this reason, let Brown go until his rearrest 8 months later). From the record of the suppression hearing, we know that Brown's legs were shackled during the pre-interview, his mother was not present (even though he was a juvenile), and that finally he caved in and made a "statement" -- to the effect that Keith King had shot the officer, and that he (Brown) had simply "called his bluff:"

> Q. Okay. Now, when is the first time that you start having conversations about him stating that he's [Keith King is] gonna kill somebody?
>
> A. About two blocks before we got to Circle K.

10

> Q. Okay, and tell me exactly what you recall Keith King saying to you.
>
> A. He gonna kill somebody.
>
> Q. Okay. What do you say to that?
>
> **A. I called his bluff.**
>
> **Q. So you're calling his bluff, you don't believe it?**
>
> A. Yes. Sir.
>
> **Okay, you're basically telling him that you believe he's got like the nerve to do it?**
>
> **A. Yes, sir.**

These "yes" answers to Detective Carr's suggested interpretations of "called his bluff" are the sum total of the state's evidence as to Brown's guilt (which resulted in a life sentence for first degree murder), and there are serious reasons to doubt that the statement in general and these answers in particular were made "knowingly, intelligently, and voluntarily." In addition to the psychological pressure, shackling, and absence of parental guidance noted above, the psychological testimony at the suppression hearing was that Mr. Brown had an I.Q. of 56 (signifying clear mental retardation), read at a 3rd grade level, was easily led, and would basically agree to anything. Based simply upon these facts already of record, undersigned counsel has alleged that she will be amending the pro se petition to raise an issue as to whether Brown's "confession" noted above was knowing, intelligent, and voluntary. The vehemently-contested, withheld documents in the state attorney's file here (including but not limited to the plea recommendation memos in both the King and Brown cases), may well demonstrate additional facts supporting a claim of involuntariness -- in addition to the possible falsity of the confession and actual innocence of Mr. Brown. See Liebman and Hertz, supra,

11

§ 19.4 pp. 520-521 at n.4 (recognizing that "[d]iscovery may be particularly useful in establishing out-of-court misconduct by law enforcement personnel, for example prosecutorial suppression of exculpatory evidence or presentation of false inculpatory evidence, [and] extraction of involuntary confessions;" "Frequently misconduct hidden by police officers or prosecutors, or both, can be uncovered by obtaining production of prosecutors' files.").

Pursuant to Rule 6, the Advisory Comments, and the Supreme Court's subsequent decisions in Blackledge and Bracy, this Court correctly found -- based upon these facts and arguments -- that Mr. Brown had made a sufficient showing for a finding of "good cause" for discovery of the notes and memoranda in the state attorney's file. Accordingly, the Court should deny the motion to quash and order the state attorney to provide all of the withheld notes and memoranda to undersigned counsel forthwith.

It is impossible to hypothesize at this juncture what additional supportive facts may be found within these notes and memos. However, it is for undersigned counsel -- not the state attorney -- to determine their usefulness and relevancy. After reviewing all of the withheld documents, counsel should be able to determine with more certainty what additional areas of investigation/discovery will be necessary in this case, after which investigations/discovery, it will be possible to amend the complaint to state additional prima facie claim(s) for relief entitling Mr. Brown to an evidentiary hearing. To amend the petition now -- prior to conducting this most basic investigation and knowing all of the facts -- would be premature and a waste of valuable resources for everyone involved in this case.

WHEREFORE, for all of the foregoing reasons, the petitioner, TIMOTHY BROWN, respectfully requests that the Court deny the state attorney's motion to quash, and order the state attorney to produce forthwith **all** documents removed from the Brown/King file prior to the public records review pursuant to the alleged Kokal exception (including but not limited to any and all inter-office and inter-agency memoranda and any and all documents reflecting the state attorney's "mental impressions, conclusions, litigation strategy or legal theory," which must be disclosed pursuant to the Public Records Law).

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: *Jacqueline E. Shapiro*
Brenda G. Bryn
Timothy Day
Assistant Federal Public Defenders
Florida Bar No. 0708224
101 N.E. 3rd Avenue, Suite 202
Ft. Lauderdale, Florida 33301
Tel./FAX: (954) 356-7436/7556

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument was mailed this 10th day of June 1998, to Assistant Attorney General John P. Goshgarian, Civil Litigation Division, 1000 S.E. 6th Street, 10th Floor, Ft. Lauderdale, Florida 33301, and to Assistant Attorney General Joseph Tringali, 1655 Palm Beach Lakes Boulevard, Suite 300, West Pam Beach, Florida 33401-2299.

*Jacqueline E. Shapiro*
for Brenda G. Bryn